## UNITED STATES v. STEIN et al.

District Court, W. D. New York.

April 22, 1943.

George L. Grobe, U. S. Atty., of Buffalo, N. Y., for the United States.

William B. Mahoney, of Buffalo, N. Y., for defendant Stein.

BURKE, District Judge.

An indictment was filed on January 4, 1943, charging the above-named defendants with receiving, concealing and facilitating the transportation and concealment of approximately 279 ounces of illegally imported gold bullion and with assisting and being concerned with others in the illegal importation, concealment and subsequent transportation of illegally imported goods of the value of more than $100, consisting of approximately 279 ounces of gold bullion and with conspiracy to violate the laws of the United States relating to the importation of goods.

On January 12, 1943, the defendant Stein filed a notice of motion supported by his own affidavit and one made by his attorney for an order directing the return to the defendants of all memoranda, including slips, receipts and papers taken from the defendants by customs agents, secret service agents and city detectives and all other evidence which was taken from the persons of said defendants at the time of their arrest and for an order directing the United States Attorney to destroy all evidence which cannot be returned and for an order suppressing the use of the same upon the trial.

The defendant Minneci does not join in this proceeding. There is no explicit claim as to what was seized on the occasion of the arrest. The language of Stein's affidavit is "a search was made of the content of the same and the bag and its entire content was seized from deponent * * *". The one reference in Stein's affidavit to his possession of the bag is contained in a paragraph of the affidavit narrating the occurrence of the search of his person. There it is stated "That he was immediately taken

to an office on the second floor of the airport where his person was searched by detective Dressel and a key ring was taken from his person and a number of keys were examined and an attempt made to insert the same in the lock on a traveling bag that was in deponent's possession at the time of his arrest and eventually one of the keys was found to fit the same". There is, therefore, no claim made by Stein that any memoranda or papers were taken from him unless it be unwarrantedly assumed that they were contained in the contents of the traveling bag. It is to be noted that the notice of motion specifies that a motion will be made for an order directing the United States Attorney to return, not to the defendant Stein, but to the defendants Samuel M. Stein and Michael C. Minneci all memoranda, etc.

■ The failure or reluctance of Stein to explicitly claim possession of the articles seized is readily perceived. A large quantity of gold bullion was contained in the traveling bag at the time of seizure. It has since the filing of this motion been forfeited to the Government as contraband pursuant to an order of this court in a forfeiture proceeding. By provision of Section 1593(c) of Title 19 U.S.C.A., unexplained possession of contraband goods shall be deemed sufficient evidence to authorize conviction on a trial for a violation of Section 1593(a) and 1593(b) relating to smuggling and clandestine importations. An unequivocal claim by Stein in this proceeding to possession of the gold bullion might prove embarrassing to him on the trial. But he cannot prevail in this proceeding with less than that.

■ Stein's affidavit in support of the motion must clearly allege some violation of his rights; otherwise he has no valid claim to the relief asked. His counsel argues in the brief that Fraser, the customs agent, one of the officers who made the arrest, testified at the preliminary hearing before the commissioner as to possession of the alleged contraband gold by both defendants. But Stein has not accepted that as true. Such evidence of possession furnished by the Government is tendered as a substitute for an unequivocal claim to possession by the petitioner, upon which the right to the relief asked must rest. The Circuit Court of Appeals has pointed out in Connolly et al. v. Medalie, 2 Cir., 58 F. 2d 629, 630, the necessity of claiming either

ownership or possession in the following language. "The petition is a pleading; it must squarely allege some violation of the petitioner's rights; else he has no standing. Perhaps he may mend his hold while the proceeding is in progress; perhaps he may accept as true what is alleged against him and go on; but nothing short of that is enough. The difference is substantial. Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma." The motion must fail because Stein has not alleged either ownership or possession of articles claimed to have been illegally seized.

■ Assuming, however, arguendo that a valid claim for relief has been stated, the seizure was proper under the circumstances as an incident to a lawful arrest. Acting on information furnished by an informer (confidential because containing the name of the informer but made available and examined by the court) to the effect that Stein was engaged in the enterprise of illegally importing gold bullion and that he was about to procure and deliver at Chicago a large quantity of gold bullion, he was trailed by a customs agent and a secret service agent as he proceeded by plane from Detroit to Buffalo on September 13, 1942. Agents of the secret service at Detroit had Stein under surveillance according to an arrangement with secret service agents at Chicago. Stein was observed as he went to the American Airlines office at Detroit and obtained transportation from Detroit to Buffalo and arranged for transportation from Buffalo to Chicago under the fictitious name of Simons. The customs agent and the secret service agent traveled on the same plane with Stein from Detroit to Buffalo and arrived at Buffalo at about 6:45 P. M. The agents saw the traveling bag of Stein weighed by officials of the American Airlines at Detroit and observed its weight to be twenty-six pounds. By pre-arrangement the plane on which Stein was traveling was met at the Buffalo airport by a customs agent and two secret service agents stationed at

Buffalo. They observed Stein enter the waiting room at the airport terminal, where he made a telephone call and secured his traveling bag, the same bag which had been weighed in at Detroit. He proceeded by automobile to the Hotel Statler in downtown Buffalo where he checked his traveling bag at the checkroom, made a telephone call in a public booth in the lobby and entered the diningroom. Shortly thereafter he was joined by the co-defendant Minneci. After dining they left the hotel and walked to a point nearby where they both entered an automobile. Minneci drove the car back to the entrance of the Statler Hotel where Stein left the automobile, entered the hotel, secured his traveling bag, returned to the car and placed it in the rear compartment. Stein then re-entered the automobile and it was driven by Minneci to the New York Central Railroad station in Buffalo. Near the entrance to the station the car was stopped and both defendants got out, opened the rear compartment, took the traveling bag therefrom and placed it on the pavement, opened it and placed therein a package about the size of a shoe box wrapped in brown paper. The bag was then closed and locked by Stein, who, accompanied by Minneci, picked up the bag and walked to the curb in front of the entrance to the station. The defendants there engaged in a short conversation, went back to the car, put the bag in the rear compartment, entered the car and drove to the Buffalo airport. Stein got out of the car, took the traveling bag and entered the waiting room accompanied by a porter who carried the bag. Minneci remained in the car and drove it to the parking lot. The agents observed Stein's traveling bag placed upon the scales in the waiting room and observed that the weight was forty-five pounds. Stein was then joined by Minneci. Shortly thereafter both defendants were placed under arrest. They were taken to the second floor of the airport terminal. On the way Stein dropped a baggage ticket stub on the floor which was retreived by one of the secret service agents. Upon examination it proved to be the stub for the ticket attached to Stein's traveling bag. Stein's person was thereupon searched and keys were taken from him. One of the keys was used to open the traveling bag. A package containing gold bullion was contained in the traveling bag together with personal articles. The gold bullion was contained in a box wrapped with an outer covering of newspaper and brown paper. Attached by adhesive tape to the outer wrapper of the box was a gold assay report. Inside of the box the gold bullion was wrapped in a newspaper published at Hamilton, Canada, and dated July 8, 1942. The traveling bag, together with all its contents, including the package containing the gold bullion, was thereupon seized by the agents.

A police officer may arrest without warrant persons believed by the officer upon reasonable cause to have been guilty of a felony. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. The facts within the knowledge of the arresting officers were such as to constitute reasonable cause for them to believe that the defendants were, at the time of the arrest and that they had been immediately prior thereto, engaged in the commission of a felony, viz., concealing and facilitating the transportation and concealing of illegally imported gold bullion. Their belief was based not only on information furnished by an informer but on the conduct of the defendants, the use by Stein of a fictitious name in procuring transportation by plane, the procuring of the package by Stein at Buffalo and finally by the marked increase of the weight of Stein's traveling bag after the package had been placed in it at Buffalo. Anyone of these facts, standing alone, might amount to no more than suspicion. Taken together, they furnished reasonable ground for belief on the part of the arresting officers that a felony had been committed and was being committed in their presence. The arrest was, therefore, justified under the circumstances. Shettel v. United States, 72 App.D.C. 250, 113 F.2d 34; Scher v. United States, 6 Cir., 95 F.2d 64, 65, affirmed 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151; Lambert v. United States, 9 Cir., 282 F. 413, 417. Contemporaneous with the arrest and as an incident thereto, they had the right to seize the things used in connection with the commission of the crime. Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Carroll v. United States, supra, 267 U.S. page 158, 45 S.Ct. page 287, 69 L.Ed. 543, 39 A.L.R. 790.

Motion denied in all respects.